# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN M. FLOYD & ASSOCIATES, INC, a Texas corporation,<br><br>Plaintiff,<br><br>v.<br><br>FIRST IMPERIAL CREDIT UNION, a California corporation,<br><br>Defendant. | Case No. 16-cv-1851 DMS (WVG)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** |

This case comes before the Court on Defendant First Imperial Credit Union's ("FICU") motion for summary judgment or partial summary judgment pursuant to Federal Rule of Civil Procedure 56. The motion came on for hearing on October 20, 2017. Stephen L. Schreiner and Michael D. Breslauer appeared for Plaintiff John M. Floyd & Associates, Inc. ("JMFA"), and Jennifer E. Duty and Benjamin Taliaferro Morton appeared for Defendant. After considering the parties' briefs, oral argument, the relevant legal authority, and the record, Defendant's motion is granted.

/ / /

/ / /

# I.

# BACKGROUND

JMFA is a consulting firm that develops and implements an overdraft privilege ("ODP") program for financial institutions. The ODP program generates and captures non-interest revenue for financial institutions by charging customers a fee for covering purchases when they overdraft their account. On or about August 5, 2008, JMFA entered into a three-year agreement with FICU to implement JMFA's ODP program.[1]

The agreement describes four phases for implementing the ODP program. First, in the "analysis phase," JMFA would examine FICU's account structures and procedures, and provide "recommendations" for implementing the ODP system. Second, in the "presentation phase," JMFA would review its recommendations with FICU, and provide a plan for implementing the approved recommendations. Third, in the "implementation phase," JMFA would coordinate and assist in the implementation of the approved recommendations and install systems to track the progress of the implemented recommendations. Lastly, in the "follow-up phase," JMFA would meet with FICU to review the status and the results of the implemented recommendations.

The agreement expressly states JMFA would be compensated on a contingency basis. Specifically, FICU agreed to pay 27 percent of its monthly quantified net increase in non-interest income and returned item expenses related to nonsufficient funds ("NSF") and overdraft charges. The agreement provided for a

---

[1] On June 6, 2008, JFMA sent a letter proposal to FICU's former Chief Executive Officer ("CEO"), Joseph R. Ramirez, regarding the implementation of its ODP program at FICU. On July 24, 2008, Mr. Ramirez signed the proposal on behalf of FICU, and on August 5, 2008, JMFA's Chairman, John M. Floyd, signed the proposal on behalf of JMFA. The letter proposal expressly states, "Upon acceptance by [FICU], this proposal shall become the Agreement between [JMFA] and [FICU]." (Compl. ¶ 8, Ex. 1.)

36-month contract term to commence as follows:

> [FICU] will have the program operational for ninety (90) days prior to JMFA billing for contingency fee pricing. After the recommendations have been installed and monitored for ninety (90) days, we will quantify the increased income and [FICU] agrees to pay monthly the fees, as referenced above….

(Compl. ¶ 8, Ex. 1.)

The agreement further provides that in the event a recommendation is not installed, it will not be included in the fee calculation.[2] However, "if any recommendation, within 24 months of the end of the tracking period, is installed or installed as modified, or initially declined and later installed as recommended or as subsequently modified or installed using another party, it will be included in the fee calculation for a period equal to the contract term." (Compl. ¶ 8, Ex. 1.) The agreement does not define "tracking period."

After the parties executed the agreement, JMFA sent two representatives to FICU's headquarters in El Centro, California to review FICU's account structures and procedures. After the completion of the on-site review, JMFA presented FICU with two studies dated September 5, 2008, containing JMFA's recommendations for implementing the ODP program. Subsequently, FICU began installing JMFA's recommendations. It is undisputed that Defendant installed JMFA's recommendations; however, JMFA's ODP program was never made operational.

On March 2, 2009, Mr. Ramirez left FICU. As a result, FICU delayed launching the ODP program until a new CEO joined FICU. On July 1, 2009, FICU hired Fidel Gonzalez as its new CEO. On December 9, 2009, Mr. Gonazlez attempted to renegotiate the agreement with JMFA's Regional Director, Emily Harrington, seeking to reduce the percentage of JMFA's contingency fee. Ms.

---

[2] The agreement appears to use "recommendation" and the ODP program interchangeably.

Harrington declined Mr. Gonzalez's request for fee reduction. On the same day, Mr. Gonzalez e-mailed Ms. Harrington, stating "[t]his is to officially inform you that we will not be moving forward with the JMFA overdraft privilege program." (Mem. of P. & A. in Supp. of Mot., Ex. 10.)

In 2012, FICU installed and implemented an ODP program through another vendor, SmartStep, which like JMFA, designs and implements an ODP program. In May 2016, JMFA discovered that FICU had implemented an ODP program, and believed it was improperly using JMFA's recommendations and software. Thereafter, on July 20, 2016, JMFA filed a Complaint against FICU alleging the following claims for relief: (1) breach of contract, (2) fraudulent misrepresentation, (3) fraudulent concealment, (4) misappropriation of trade secrets, (5) unfair competition, and (6) declaratory relief. On May 25, 2017, the parties filed a joint motion to dismiss the second and third claims for relief, which the Court granted. On August 28, 2017, FICU filed the present motion.

## II.
## DISCUSSION

### A. Legal Standard

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment

1  is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be
2  believed, and all justifiable inferences are to be drawn in its favor. *Anderson v.*
3  *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary
4  judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v.*
5  *Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific
6  facts showing there is a genuine issue for trial. *Id.*; *see also Butler v. San Diego*
7  *Dist. Attorney's Off.*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant
8  produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must
9  counter by producing evidence of his own). More than a "metaphysical doubt" is
10 required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co.,*
11 *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## B. Breach of Contract

Defendant moves for summary judgment on the claim for breach of contract, contending there was no breach. In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (Cal. Ct. App. 2008). Defendant contends there was no breach because it never implemented Plaintiff's ODP program. Plaintiff argues Defendant implemented an ODP program that was "functionally identical" to its ODP program, and therefore, Defendant's failure to pay amounted to a breach. Nothing in the agreement, however, requires Defendant to pay Plaintiff for the increase in Defendant's monthly income from ODP and NSF fees as a result of implementing another vendor's program, even a functionally equivalent one. Indeed, Defendant's obligation to pay under the agreement arises after "[Plaintiff's] ODP program has been operational" or "[Plaintiff's] recommendations have been installed and monitored for ninety (90) days[.]" (Compl. ¶ 8, Ex. 1.) Plaintiff, however, fails to provide any evidence to show Defendant operated Plaintiff's ODP

program or installed and monitored Plaintiff's recommendations.

Plaintiff relies on the following provision in the contract to support its breach of contract claim: "[i]f any recommendation … is installed or installed as modified, or initially declined and later installed as recommended or as subsequently modified or installed using another party, it will be included in the fee calculation for a period equal to the contract term." (Compl. ¶ 8, Ex. 1; *see* Mem. of P. & A. in Opp'n to Mot. at 17.) However, Plaintiff does not offer any evidence to show that SmartStep, in implementing its ODP program, installed Plaintiff's recommendations. Plaintiff merely claims SmartStep's ODP program and Plaintiff's ODP program are functionally identical. Moreover, the installation of SmartStep's ODP program does not amount to a modification of Plaintiff's ODP program, but rather a replacement with another vendor's product. *See John M. Floyd & Assoc., Inc. v. First Bank*, No. CIV.A. 5:02CV00101, 2004 WL 2550453, at *6 (W.D. Va. Nov. 3, 2004) ("It is nonsensical to conclude that installation of a competing vendor's program was a modification of Floyd's recommendation to install its own program…. Therefore, the fact that First Bank installed a competitor's product, as a matter of law, is not a 'modification' of Floyd's recommendation to install its own program."). Because Plaintiff has failed to identify a genuine dispute of material fact with regard to whether there was a breach of contract, Defendant's motion is granted as to this claim.[3]

C. **Misappropriation of Trade Secrets**

Defendant also moves for summary judgment on the claim for misappropriation of trade secrets, arguing Plaintiff's ODP program does not constitute a trade secret. To prevail on a claim for trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA"), the plaintiff must

---

[3] In light of this ruling, the Court declines to address the parties' remaining arguments with respect to the breach of contract claim.

establish: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (Cal. Ct. App. 2003). Here, Defendant only challenges the first element.

Under the CUTSA, a trade secret is defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). Thus, the definition of trade secrets consists of three elements: "(a) information (b) which is valuable because unknown to others and (c) which the owner has attempted to keep secret." *Abba Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 18 (Cal. Ct. App. 1991) (citation omitted). A plaintiff seeking relief for misappropriation of trade secrets "must identify the trade secrets and carry the burden of showing that they exist." *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). The plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those per'sons skilled in the trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (citation omitted).

Defendant contends Plaintiff's ODP program does not constitute a trade secret because ODP programs are generally known and used in the banking industry. In support, Defendant offers deposition testimony of its expert witness, Peggy Hansen, who testified that JMFA did not invent the ODP program, and such program "exists

all over the United States in all types and sizes of financial institutions." (Mem. of P. & A. in Supp. of Mot., Ex. 26.) Further, Ms. Hansen reviewed the procedural studies and training guidelines provided by JMFA to FICU and stated these documents contain "general information about those types of programs that are available to anyone skilled and knowledgably about them." (*Id*.) Ms. Hansen analogized an ODP program to programs or services for a home equity line of credit or commercial real estate loans, which are also in general broad usage in the banking industry.

Plaintiff responds the elements of its ODP program, including its "software, recommendations, ODP and NSF policies, implementation procedures, forms of customer communications, and other written materials[,]" are confidential and proprietary trade secrets that are not generally known to the public. (Mem. of P. & A. in Opp'n to Mot., 21.) Plaintiff, however, has not provided any evidence to counter Defendant's argument that the alleged trade secrets were common or generally known in the banking industry. *See Princess Cruises, Inc. v. Amrigon Enterprises, Inc*., 51 F. App'x 626, 628 (9th Cir. 2002) (defendant was not liable for misappropriation of trade secrets absent "specific evidence that its alleged trade secrets were not common or obvious concepts in the [relevant] industry."). Further, Plaintiff has not identified specific information that it claims to be trade secrets, but rather identifies a broad range of documents that it contends contain confidential and proprietary trade secrets. *See Social Apps, LLC v. Zynga, Inc*., 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012) ("A description of the category, or even of the subcategories of information within a category, does not comply with the requirement to identify the actual matter that is claimed to be a trade secret."). Plaintiff's generalizations concerning the elements of its ODP program are insufficient to establish the necessary distinctions between its proprietary information and general knowledge in the trade. Because Plaintiff has not identified its purported trade secrets with sufficient particularity, it has failed to establish a

genuine dispute of material fact as to this claim. Accordingly, Defendant's motion with respect to this claim is granted.

**D.     Unfair Competition**

Defendant contends it is entitled to summary judgment on the UCL claim under the unlawful prong because Plaintiff cannot prevail on its claims for breach of contract or misappropriation of trade secrets. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). The Complaint appears to allege a UCL claim based on all three prongs.

The unlawful prong of the UCL incorporates "violations of other laws and treats them as unlawful practices." *Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999). "Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt.*, 152 Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007). For example, a claim for misappropriation of trade secrets can also support a claim for violation of the UCL. *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1169 (9th Cir. 1998).[4] Therefore, a UCL claim under the unlawful prong "stands or falls depending on the fate of antecedent substantive causes of action." *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (Cal. Ct. App. 2001). Here, because the misappropriation of trade secrets claim does not survive summary judgment, the Court grants summary judgment on the UCL claim under the unlawful prong.[5]

///

---

[4] Generally, a common law violation such as breach of contract is insufficient to establish a violation of "unlawful" prong of California's unfair competition law. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (citations omitted).

[5] Plaintiff's UCL claim under the unfairness and fraudulent prongs survive.

**E.    Declaratory Relief**[6]

Defendant argues it is entitled to summary judgment on the declaratory relief claim because it is ancillary to the breach of contract claim. Plaintiff alleges "FICU is obligated to pay JMFA at least $460,350 in fees due under the terms of the ODP Agreement." (Compl. ¶ 63.) Plaintiff therefore seeks a declaratory judgment "determining the respective rights and obligations of the parties under the ODP Agreement[.] (*Id.* ¶ 65.)

Declaratory relief "is designed in large part as a practical means of resolving controversies, so that parties can conform their conduct to the law and prevent future litigation." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 648 (Cal. 2009). "To qualify for declaratory relief, [a party] would have to demonstrate its action presented two essential elements: '(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to [the party's] rights or obligations.'" *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 909 (Cal. Ct. App. 2013) (quoting *Wilson & Wilson v. City Council of Redwood City*, 191 Cal. App. 4th 1559, 1582 (Cal. Ct. App. 2011)). A declaratory judgment is not a corrective action, and therefore, it should not be used to remedy past wrongs. *See Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1173 (E.D. Cal. 2009) ("'A declaratory relief claim 'operates prospectively, and not merely for the redress of past wrong.'") (quoting *Babb v. Super. Ct.*, 3 Cal. 3d 841, 848 (Cal. 1971)). Therefore, "where there is an accrued cause of action for an actual breach of contract

---

[6] Federal courts sitting in diversity apply the substantive law of the forum state. *See Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2000) ("It is well-established that federal courts sitting in diversity must apply state substantive law and *federal* procedural rules.") (citations omitted). For this reason, federal courts have consistently applied California Code of Civil Procedure § 1060 rather than the federal Declaratory Judgment Act when sitting in diversity. *See Schwartz v. U.S. Bank, Nat. Ass'n*, No. CV 11-08754 MMM JCG, 2012 WL 10423214, at *15 (C.D. Cal. Aug. 3, 2012) (compiling cases). The Court likewise applies California law.

or other wrongful act, declaratory relief may be denied." *Baldwin v. Marina City Properties, Inc.*, 79 Cal. App. 3d 393, 407 (Cal. Ct. App. 1978).

Plaintiff's declaratory relief claim is predicated upon Defendant's purported breach of the agreement. Because the Court grants summary judgment on the breach of contract claim, there is no longer an actual or present controversy such that declaratory relief would be appropriate. *See Eisenberg v. Citibank, N.A.*, No. 213CV01814CASJPRX, 2017 WL 2978752, at *7 (C.D. Cal. July 10, 2017) (granting summary judgment on the declaratory relief claim predicated on a purported breach because the court concluded defendants have not breached the agreement); *Trapana v. Prudential Ins. Co. of Am.*, No. D038617, 2002 WL 505764, at *6 (Cal. Ct. App. 2002) ("Once [plaintiff] no longer had a breach of contract cause of action against [defendant], her declaratory relief cause of action did not 'present an actual controversy which [could] be resolved by means of declaratory judgment.'") (quoting *Cardellini v. Casey*, 181 Cal. App. 3d 389, 397 (Cal. Ct. App. 1986)). Moreover, the requested declaratory relief is based on allegations regarding Defendant's past wrongs in connection with the alleged breach, which is an improper basis for declaratory relief. Accordingly, Defendant's motion is granted with respect to this claim.

### III.
### CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: October 25, 2017

Hon. Dana M. Sabraw
United States District Judge